EASTERN DIST.
*January,* 1832.

PECK & WALTON
*vs.*
GALE.

Proof of partial payment are no evidence that the vendor has performed all the acts he was bound to perform, before he could demand the price.

---

## PECK & WALTON *vs.* GALE.

APPEAL FROM THE COURT OF THE FIRST DISTRICT.

A record from a court in this state does not require the certificate of the judge to give it authenticity.

A certificate of the clerk that the transcript contains the *proceedings on file and of record*, will be presumed to contain the whole proceedings, and may be read in evidence.

Protests of captains of vessels are not good evidence unless in the event of the death of the persons making them; nor can they be received to prove an authority in the master to sell the ship in case of risk of her loss or destruction.

A certificate of a sale made by a parish judge in his character of auctioneer, is good evidence.

A joint owner who neglects or refuses to answer a letter, by which his co-owner announces to him, he had purchased a stranded vessel formerly belonging to them, on joint account, cannot afterwards claim a portion of the vessel.

The plaintiffs were two-thirds owners of the schooner Non Plus, and the intervening party owner of the other third. On a voyage to Attakapas the schooner was stranded, and a regular protest made by the master. She was sold for the benefit of whom it might concern, and purchased by the defendant. She was afterwards lost on a voyage from Charleston to Matanzas, the defendant having previously effected insurance on her in the sum of two thousand five hundred dollars. This suit was brought to recover two-thirds of the amount insured, which was enjoined by the plaintiffs in the hands of Gale, the agent for the intervening party.

The plaintiffs set up title to the money on two grounds. 1. Under the contract, by which they were to be two-thirds interested in the purchase of the vessel. 2. That the intervening party in making the purchase, is presumed to have purchased for the other part owners. The only evidence which related to a contract, was the letter of the intervening party to the plaintiffs, which advised the latter that he, the defendant, had purchased the vessel, and had offered one thousand dollars to get her afloat, and wishing to know if the plaintiffs *would still be owners as before, and to send an answer by the first mail.* To this proposition there was no evidence that any assent by letter or otherwise was given. There was judgment for the intervening party, and the plaintiffs appealed.

*Morse,* for appellees.

41

1. The sale was legally made, and the intervening party became the purchaser and paid the price.

2. The appellants neglected to signify their intention of continuing owners of their proportion of the vessel, or to pay the price.

3. If the vessel was sold without authority, as contended for by appellants, they must fail in their action, which is predicated on the sale itself, and goes for their proportion of the amount insured on her subsequent to the sale.

·*Strawbridge*, for appellant.

*Mathews, J.* delivered the opinion of the court.

This suit was instituted, for the purpose of causing the defendant, Gale, to be enjoined from paying over to Dough a certain sum of money which they alleged to be in the hands of the former, and the greater part of which the plaintiffs claim as belonging to them. They allege in their petition that they were the owners of two-thirds of a certain schooner called the Non Plus (valued at three thousand dollars) jointly with Dough, owner of the remaining third, &c.; that said schooner was, by stress of weather, stranded within the limits of the parish of St. Mary, and in consequence of her perilous situation, was sold at auction, and that Dough became the purchaser for them and himself in the proportions of their original interests on said vessel; that she was afterwards got off the beach on which she had been stranded; was insured and navigated on account of the purchaser, who fraudulently claimed her as his sole property, under the bill of sale made to him in consequence of his purchase; that the vessel was lost, and the money in the possession of the defendant, Gale, was obtained on the insurance, &c. He answered, disclaiming any right to these funds in himself, except so far as relates to liens on a portion of them on account of expenditures in recovering the money, &c.

Dough appeared by his counsel, and pleaded to the jurisdiction of the court, alleging himself to be a resident of the parish of St. Mary. This exception was overruled, and he

afterwards intervened in the suit, and claims the funds
enjoined as his sole property, &c. His claim was recognised
as valid by the court below, and the injunction dissolved. The
plaintiffs appealed.

EASTERN DIST.
January, 1832.

PECK & WALTON
vs.
GALE.

The evidence of the case offered and admitted in the
District Court was the following : On the part of the plaintiffs,
the deposition of the witness Lyon, was taken by consent of
parties. The bill of sale of two-thirds of the vessel in dispute
made by Dough (as agent for Gregory) the plaintiffs, record
of a suit, Basset vs. Dough, prosecuted in the parish of St.
Mary, a letter of Dough to the plaintiff, dated on the 29th of
December, 1829, and a bill of exchange and protest thereon,
drawn on the plaintiffs. On the part of the intervening party,
the protest of the master of the schooner relative to its strand-
ing and perilous situation, the proces verbal of the sale of
said schooner, and the intervention or interpleading of the
plaintiffs, in the case of Bassett vs. Dough.

The first question which is presented by this statement of
the case, relates to the legality of the proceedings against the
intervening party, i. e. whether the exception which he pleaded
to the jurisdiction of the court should have been maintained ?

He was not made a defendant, and the allegations against
him in the petition seem to have been stated merely as
inducement to show the right of the plaintiffs to the funds in
the possession of Gale, which represented the thing for which
they had been acquired. Had this defendant been in posses-
sion of the vessel, the plaintiffs would certainly have a legal
privilege to pursue their claim and establish their right to it
against him ; and if any third person pretended to be pro-
prietor, he would be compelled to support his petition in the
court possessing cognizance of the original cause, or leave
them to be settled in an action in which he would necessarily
be plaintiff. In the present case, Dough thought proper to
pursue the former course, and he is now legally in contest
with the plaintiffs. We must, therefore, proceed to the exam-
ination of the case on the pleadings and evidence. Two bills
of exception appear on the record, which it is proper to dis-
pose of before an examination of the effects resulting from
the admissions and evidence of the parties. The first was

A record from
a court in this
state does not
require the cer-
tificate of the
judge to give it
authenticity.

EASTERN DIST.
*January*, 1832.

PECK & WALTON
*vs.*
GALE.

taken by the intervenor to a record of a suit prosecuted by Bassett (the master of the schooner at the time when the stranding took place) against Dough in the District Court of the Fifth Judicial District, &c. on two grounds : First, That it was not authenticated by the signature of the judge ; and secondly, That the clerk did not certify that it was a copy of the whole proceedings in the case. As to the first of these objections, it suffices to say, that we know of no law which requires a record to be authenticated by the signature of the judge, before whom judicial proceedings take place in order to make it admissible as evidence in any other court of the state. The clerk is the keeper of such records, and being known in that capacity, faith is to be given to his certificate and attestation. In the present instance, he certifies the record offered in evidence to be a correct transcript of the original proceedings in the case *on file and of record* in his office. According to this certificate, we conclude that the copy thus certified, contains all the proceedings which took place in that cause, down to the time of making the transcript, and consequently that it was properly admitted in evidence.

*A certificate of the clerk that the transcript contains the pro- ceedings on file and of record will be presumed to contain the whole proceed- ings and may be read in evidence.*

The second bill of exception is, to the admissibility of documents, offered in evidence by the intervening party, viz : the protest of the master, mate and one of the crew of the schooner, made after the accident occurred to the vessel, and the certificate of the parish judge and auctioneer, of the proces verbal of the sale made by him of said vessel. The first of these documents, was opposed on the ground that the statements therein made, were ex-parte and consequently not legal evidence against the plaintiffs. The second was objected to on the ground, that the certificate is not legal proof of the facts therein contained.

*Protests of captains of ves- sels are not good evidence, unless in the event of the death of the persons making them, nor can they be received to prove an au- thority in the master to sell the ship in case of risk o. her loss or destruction.*

In relation to protests made by masters of vessels, it is believed that they are not good evidence, unless in the event of the death of the person making them. *See Condy, Marshall, p.* 715. This is clearly the rule in suits against insurers. Its application to disputes between joint owners of a vessel, as in the present case, is denied by the counsel for the intervenor, on the ground that a master being agent for the owners, they must be bound by his acts and declarations as

such. A master is, however, not an agent to sell a ship by virtue of his office, the law permits him only in cases of imminent risk of loss or destruction, to assume the right of selling, and when the power to sell is thus assumed, and afterwards disputed, it might be made a question, whether he could be received in any manner to establish the facts, on which alone his authority depended, as no person can be permitted to create his own authority to act for another. Be this as it may, we are clearly of opinion, that the protest offered in the present case, ought not to have been received. The question as to the admissibility of the certificate of the parish judge and auctioneer, acting in his double capacity, is more doubtful. The proces verbal of sale, assumed the character, in some degree, of an authentic act, by being recorded in the office of the judge in his capacity as notary, and subscribed by the master of the vessel and two witnesses in his presence. In truth it lacked nothing except the acceptance and signature of Dough the purchaser, to make it essentially such. If we add to these considerations, the circumstance that auctioneers are required by the 12*th sec. of the act of* 1805, to give a certified statement of sales by them made to purchasers, little doubt remains of the propriety of admitting the proceeding certified in the present instance, as *prima facie* evidence, at least of the sale, but not of the genuineness of the authority, under which it was made. The admission or rejection, however, of this evidence, would produce no material change in the situation of the cause, considered in relation to the pleadings and other evidence.

In consequence of the rejection of testimony taken by interrogatories, (as not being legally certified by the commissioner) and the rejection of the protest, the case is left extremely bare of evidence, and must be decided principally on the admissions in the pleadings. The allegations in the petition, show that the claim of the plaintiffs is based principally on the right which accrued to them, under the purchase made by Dough, after the schooner met with the accident, which rendered it necessary to sell her. They state themselves to have been joint owners to the amount of two-thirds of the

A certificate of a sale made by a parish judge in his character of auctioneer, is good evidence.

A joint owner who neglects or refuses to answer a letter, by which his co-owner announces to him, he had purchased a stranded vessel formerly belonging to them, on joint account, cannot afterwards claim a portion of the vessel.

vessel with him, previous to that sale, and allege that it was his duty to have bought the property in, on joint account and that he really did so, but afterwards acted fraudulently towards them, by assuming to himself the ownership under the sale. The perilous situation of the vessel is admitted, and this being granted, if the sale was conducted in good faith, it certainly transfers title to ¯the purchaser. But from the total deficiency of testimony on the subject, the court below was, and this court is deprived of all means of testing the faith on which the sale took place. Leaving them out of consideration, the honesty of the transaction by which the intervenor assumes to be sole proprietor of the schooner; the counsel for the appellants insists, that his act in purchasing, could not legally change the property, because being originally a joint owner with them, he could do no act prejudicial to their interest, and being the real agent and administrator of the vessel, he could not legally buy. It is true that the stranding took place on the shores of the parish in which he resided, but the charge and agency of the master, to whom the schooner had been intrusted, for the purposes of navigation, did not cease by that accident, he was bound to watch over her in the perilous situation in which she was placed, and to act honestly according to the best of his ability and judgment for all who might be interested in the property; and under the existing circumstances of the case, we are of opinion that Dough might lawfully have purchased, so as to invest himself as sole proprietor.

According to this view of the cause, the right of the plaintiffs depends mainly on their acceptance of the offer made to them in a letter of the 29th December, 1829, (about twenty days after the sale of the schooner,) written to them in New-York by the purchaser. In this letter he proposed to them to become owners with him in the same proportions in which they originally held the property, on condition that they should bear their portion of the expense required to get the vessel afloat. To this letter it is not pretended that any direct answer was ever given; but the record of a suit commenced by Bassett against Dough is introduced to show that

the former had been instructed by Peck, Walton & Carley to accept the offer made to them by Dough (after his purchase) of two-thirds of the schooner then and now in dispute. In that suit the plaintiff claimed one-half of the vessel, as being interested to that amount in the purchase made by the defendant, and the latter required the production of a letter said to have been written to the former, by Peck, Walton & Carley, in which he was authorised to accept the offer made by Dough in his letter of the 29th December, 1829. The affidavit made in order to procure this paper, contains a declaration of the belief of the affiant that it really existed, and that it was in the possession of Splane, the plaintiff's attorney, and that under the authority of it said plaintiff had demanded two-thirds of the schooner from the defendant. This document was not exhibited. The plaintiff having made affidavit that it was not in his possession, an order of court was made on his attorney to produce it, who in obedience to the rule, made oath that he had seen the letter alluded to in the affidavit of the plaintiff, and that the same was once in his possession, but was unable to find it when it was called for, though he had made diligent search; that he recollected the contents of it substantially, and was willing to state the same on oath. The affidavit of the plaintiff in that suit is peculiarly worded. He swears that, as far as his recollection extends, he had not in his possession any letter similar to the one specified in the defendant's affidavit; but that at the commencement of his suit he handed over to his counsel, A. R. Splane, Esq. a letter from Peck, Walton & Carley, which he was willing should be produced, &c.

Notwithstanding the suspicion of incorrectness, which might be inferred from the wording of Bassett's affidavit, still the two affidavits of him and Splane, taken together, do not amount to legal proof of the existence of a letter, such as was specified in the affidavit of the defendant. And if none such did exist, then there is no evidence that the plaintiffs in the present action ever did accept the offer made to them by Dough, and consequently the latter under his purchase at the public sale of the schooner, became sole owner, and was

such at the time the insurance was effected, from which the money now in dispute arose—whether their proportion of the sum was ever paid to the appellants, and whether if it was not, the sale could be annulled, are questions which the pleadings in this suit do not require us to examine.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.